# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# BRUNSWICK DIVISION

BERNICE SILVA,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner,

    Defendant.

CIVIL ACTION NO.: 2:14-cv-169

## **ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff contests the decision of Administrative Law Judge William M. Manico ("the ALJ" or "ALJ Manico") denying her claim for a period of disability, disability insurance benefits, and supplemental security income. Plaintiff urges the Court to reverse the ALJ's decision and remand this case for a proper determination of the evidence. Defendant asserts the Commissioner's decision should be affirmed. For the reasons which follow, I **RECOMMEND** that the Court **AFFIRM** the decision of the Commissioner.

## **BACKGROUND**

Plaintiff protectively filed applications for a period of disability, disability insurance benefits, and supplemental security income on July 27, 2011, alleging that she became disabled on July 1, 2010, due to panic disorder, high blood pressure, a sleep disorder, heart failure, and shortness of breath. (Doc. 11, p. 2; Doc. 7-6, p. 11.) After her claim was denied initially and upon reconsideration, Plaintiff filed a timely request for a hearing. On June 4, 2013, ALJ Manico conducted a video hearing at which Plaintiff, who was not represented by counsel, appeared and testified in Vidalia, Georgia, while the ALJ was in Falls Church, Virginia.

Matthew Lampley, a vocational expert, also appeared at the hearing. ALJ Manico found that Plaintiff was not disabled within the meaning of the Act. (Doc. 7-2, p. 28.) The Appeals Council denied Plaintiff's request for review of the ALJ's decision after consideration of additional evidence, and the decision of the ALJ became the final decision of the Commissioner for judicial review. (Id. at p. 2).

Plaintiff, born on July 18, 1970, was forty-three (43) years old when ALJ Manico issued his final decision. She has a high school education. (Doc. 11, p. 2.) Plaintiff's past relevant work experience includes employment as a babysitter, caregiver, cashier, and seasonal laborer. (Id.; Doc. 10, p. 3.)

## DISCUSSION

### I. The ALJ's Findings

Pursuant to the Act, the Commissioner has established a five-step process to determine whether a person is disabled. 20 C.F.R. §§ 404.1520 & 416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987). The first step determines if the claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140. If the claimant is engaged in substantial gainful activity, then benefits are immediately denied. Id. If the claimant is not engaged in such activity, then the second inquiry is whether the claimant has a medically severe impairment or combination of impairments. Yuckert, 482 U.S. at 140–41. If the claimant's impairment or combination of impairments is severe, then the evaluation proceeds to step three. The third step requires a determination of whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal Regulations and acknowledged by the Commissioner as sufficiently severe to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) & 416.920(d); 20 C.F.R. Pt. 404, Subpt. P. App. 1; Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004). If

the impairment meets or equals one of the listed impairments, the plaintiff is presumed disabled. Yuckert, 482 U.S. at 141. If the impairment does not meet or equal one of the listed impairments, the sequential evaluation proceeds to the fourth step to determine if the impairment precludes the claimant from performing past relevant work, i.e., whether the claimant has the residual functional capacity to perform her past relevant work. Id.; Stone v. Comm'r of Soc. Sec., 503 F. App'x 692, 693 (11th Cir. 2013). A claimant's residual functional capacity "is an assessment . . . of the claimant's remaining ability to do work despite [her] impairments." Id. at 693–94 (ellipsis in original) (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)). If the claimant is unable to perform her past relevant work, the final step of the evaluation process determines whether she is able to make adjustments to other work in the national economy, considering her age, education, and work experience. Phillips, 357 F.3d at 1239. Disability benefits will be awarded only if the claimant is unable to perform other work. Yuckert, 482 U.S. at 142.

In the instant case, the ALJ followed this sequential process to determine that Plaintiff engaged in substantial gainful activity as a babysitter from July 2010 to June 30, 2012. (Doc. 7-2, p. 30.) However, the ALJ also determined there was a continuous 12-month period during which Plaintiff did not engage in substantial gainful activity, and this is the time period his decision addressed. (Id.) At Step Two, the ALJ determined Plaintiff had atrioventricular block status post pacemaker and dilated cardiomyopathy, conditions considered "severe" under the Regulations. (Id. at p. 31.) However, the ALJ determined that Plaintiff's medically determinable impairments did not meet or medically equal a listed impairment. (Id. at pp. 32, 34.) The ALJ found that Plaintiff had the residual functional capacity, through the date of his decision, to perform light work with only occasional climbing, balancing, stooping, kneeling,

crouching, and crawling. (Id. at pp. 34–35.) At Step Four, ALJ Manico found that Plaintiff could perform her past relevant work as a babysitter, which does not require the performance of work-related activities precluded by her residual functional capacity. (Id. at p. 38.) Thus, the ALJ did not proceed to the fifth and final step.

**II.     Issues Presented**

Plaintiff contends the ALJ erred because she did not waive her right to representation at the hearing. Plaintiff asserts the ALJ failed to develop the record because he failed to obtain treatment records which indicated her heart condition had deteriorated.

**III.    Standard of Review**

It is well-established that judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence," and whether the Commissioner has applied appropriate legal standards. Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for that of the Commissioner. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence. Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved. The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion. Ingram v. Comm'r of Soc. Sec. Admin., 496 F. 3d 1253, 1260 (11th Cir. 2007). The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence. Dyer, 395 F.3d at 1210. In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards.

Failure to delineate and apply the appropriate standards mandates that the findings be vacated and remanded for clarification. Cornelius, 936 F.2d at 1146.

**IV.     Representation**

    **A.     Waiver**

Plaintiff asserts the record in this case does not establish she knowingly and voluntarily waived her right to representation at the hearing. Plaintiff contends the ALJ was not prepared for the hearing because, if he had been, he would have known she reads at a fourth grade level and has an extremely low IQ. (Doc. 10, p. 11.) Plaintiff maintains, had the ALJ been aware of her low IQ, he likely would not have depended upon written documents as the basis for her understanding of issues relevant to the waiver of counsel. Plaintiff contends it "is very unlikely that she could comprehend" what she read due to her intellectual disabilities and that the ALJ accepted her response with no additional inquiry into whether she understood the implication of her decision to proceed without a representative. (Id. at p. 12.)

The Commissioner contends Plaintiff failed to allege an intellectual disability at the hearing or in the disability report she filed with the Social Security Administration. The Commissioner asserts the ALJ offered to answer any questions Plaintiff had about the waiver of her right to representation on two occasions, and she stated unequivocally she did not want an attorney or have any questions about the waiver form. (Doc. 11, p. 13.) The Commissioner avers that, if this Court determines Plaintiff's waiver of representation was not made knowingly and voluntarily and that the ALJ's duty rose to a heightened level, there must be a showing of prejudice before a finding that a claimant's right to due process was violated and that the case needs to be remanded.

"A Social Security claimant has a statutory right to be represented at a hearing before an ALJ." Polk v. Soc. Sec. Admin., Comm'r, 579 F. App'x 843, 847 (11th Cir. 2014) (citing 42 U.S.C. § 406; Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997)). "The right of representation may be waived, provided that the claimant is 'properly apprised' of her representation options, including the possibility of free counsel and limitations on attorney's fees to twenty-five percent of any eventual award." Id. (quoting Smith v. Schweiker, 677 F.2d 826, 828 (11th Cir. 1982)). "The administrative law judge has a basic duty to develop a full and fair record, regardless of whether a plaintiff is represented by counsel." Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003). Additionally, the ALJ "has a special duty to ensure the record demonstrates that an unrepresented claimant who did not waive counsel was not prejudiced by the lack of counsel." Robinson v. Astrue, 235 F. App'x 725, 727 (11th Cir. 2007) (emphasis omitted); see also Cowart v. Schweiker, 662 F.2d 731, 735 (5th Cir. 1981). However, "where counsel has been waived, the special duty to develop the record does not take effect." Robinson, 235 F. App'x at 727. "[T]he burden of proving disability rests primarily with the plaintiff." Echevarria v. Colvin, No. 8:12-CV-1801-T-TGW, 2013 WL 4518212, at *3 (M.D. Fla. Aug. 23, 2013) (citing Ellison, 355 F.3d at 1276; 20 C.F.R. §§ 404.1512(c), 416.912(c) ("You must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you are disabled.")).

After Plaintiff's claims were dismissed at the Agency level, she requested a hearing before an ALJ. (Doc. 7-4, p. 17.) In response to this request, the Social Security Administration advised Plaintiff of the processes involved with a hearing before an ALJ, including her right to representation. (Id. at p. 18.) The Social Security Administration informed Plaintiff she could choose to have a representative at the hearing to assist with her case, and that many

representatives charge a fee only in the event of a benefits award. In addition, the Administration enclosed a list of groups which could assist with obtaining a representative. (Id. and at pp. 23–24.) Further, the Administration provided Plaintiff with an enclosure entitled "Your Right to Representation", which explained what a representative can do, how to choose a representative, and what a representative could charge. (Id. at pp. 21–23.) Once the hearing date was set, the Social Security Administration once again advised Plaintiff she could choose to have a representative at this hearing and once again included the enclosure "Your Right to Representation". (Id. at pp. 34, 39–40.)

At the hearing before ALJ Manico, he and Plaintiff had the following exchange:

ALJ: All right, let's see, have you ever had a hearing in front of a judge before?

PLAINTIFF: No.

ALJ: Okay. When they denied your claim, they sent you a letter, and in the letter they would have told you about your right to have a hearing in front of a judge, and they also told you that if you wanted, you could have an attorney at your hearing if you care to do so. You also can have a hearing without an attorney[;] it's up to you. Is it your desire to have a hearing without an attorney or other representative?

PLAINTIFF: Yes. I didn't want an attorney.

ALJ: If you wanted one, I'd postpone the case for you to try to find one. All right. There's a waiver of attorney form. Could you read that over for me? If there's anything that you don't understand, ask me. If you agree with it, and you want to go forward without an attorney, I'd ask that you sign it. Otherwise, if you don't, all right.

PLAINTIFF: Okay, if I don't want an attorney, just go ahead and sign it?

ALJ: Well, read it first, okay?

PLAINTIFF: Mm hm.

| | |
|---|---|
| ALJ: | This is important. It informs you of different things, so read it. If there's anything you don't understand in the form, let me know. The lawyers write these forms, so I don't know that regular folks necessarily understand them, because lawyers have a funny way of writing things sometimes. |

(Doc. 7-2, pp. 47–48.) Plaintiff signed the representative waiver form on the date of the hearing before ALJ Manico, by which she stated she understood her right to representation, voluntarily waived this right, requested to proceed without a representative, and acknowledged receiving a list of legal service organizations. (Doc. 7-4, p. 55.)

The record is clear that Plaintiff was apprised of her right to representation on at least three occasions—twice by the Administration in writing and once by ALJ Manico at the hearing. While the Court notes Plaintiff's assertion that she reads on a fourth grade level, the record does not bear that she informed the ALJ of her ability or otherwise expressed objection to the waiver in any way. Plaintiff did not express in any manner that she did not understand the waiver or her rights. This enumeration of error is without merit.

### B. Duty to Develop Record

Plaintiff maintains there is "clear evidence of prejudice" due to evidentiary gaps in the record. (Doc. 10, p. 13.) Plaintiff contends the ALJ failed to obtain updated treatment records from her primary care physician, as the last treatment note concerning her disability was dated May 2012. Plaintiff also contends that her updated records from South Coast Medical Group reveal that her cardiac condition took a turn for the worse. In addition, Plaintiff alleges ALJ Manico failed to obtain all of the treatment records from Appling Counseling Center. Plaintiff asserts this failure "is particularly troubling" because the ALJ discounted her claims of mental difficulties, finding her mental disorders to be non-severe based in part upon her lack of "history

of psychological treatment." (Id. at pp. 14–15.) Plaintiff asserts that, had she been represented, an attorney would have appropriately developed the medical evidence.

The Commissioner responds that Plaintiff fails to show the ALJ's development of the record resulted in any evidentiary gaps which demonstrate unfairness or clear prejudice. The Commissioner alleges that Plaintiff's counsel submitted updated records to the Appeals Council, which revealed Plaintiff's reports of doing "much better." (Doc. 11, p. 14.) The Commissioner also alleges that Plaintiff did not obtain any additional evidence from Appling Counseling Center, and it is her burden to show she is disabled.

As noted above, the ALJ's special duty to develop the record did not take effect because Plaintiff waived her right to counsel knowingly and voluntarily. In addition, the Appeals Council reviewed the additional records Plaintiff submitted and found no reason to reject or modify the ALJ's determination on this basis. (Doc. 7-2, pp. 2–3.) In short, Plaintiff failed to meet her burden of establishing disability (as discussed further below), and she is not entitled to her requested relief.

**V.      Listing 12.05C**

Plaintiff avers an Agency psychologist, Dr. John Whitley, diagnosed her with borderline mental retardation, and, although the ALJ noted this diagnosis, he failed to provide any further discussion or analysis of whether she meets Listing 12.05C. Plaintiff contends the evidence shows she had four valid IQ scores within the 12.05C range, and she suffers from severe cardiac disorders. Plaintiff maintains the ALJ did not provide any real, substantive analysis of her adaptive functioning. According to Plaintiff, a complete review of the record leads to the conclusion she satisfies the requirements of Listing 12.05C, yet the ALJ did not offer even a conclusory finding of whether she in fact meets this Listing.

9

The Commissioner counters that Plaintiff did not have a diagnosis of mental retardation, as required by Listing 12.05C. Rather, the Commissioner asserts, Dr. Whitley diagnosed Plaintiff with having borderline intellectual functioning, and the ALJ specifically found this was not a severe impairment. The reason for this, the Commissioner contends, is because Plaintiff was working at substantial gainful activity levels as a homecare aide at the time of this diagnosis and then as a babysitter for several years thereafter. The Commissioner also contends that, because the ALJ did not find Plaintiff had an intellectual disability, he was not required to determine whether she met Listing 12.05C. The Commissioner further contends Dr. Whitley's opinion and the results of the IQ test he administered were assigned little weight because they were from before Plaintiff's alleged onset date and at a time she was engaged in substantial gainful activity.

To prevail at step three, the claimant must provide specific evidence—such as medical signs, symptoms, or laboratory-test results—showing that her impairment meets or medically equals a listed impairment. Sullivan v. Zebley, 493 U.S. 521, 530 (1990). "For a claimant to show that h[er] impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Id. (alteration in original). A claimant whose severe impairment satisfies or medically equals a listed impairment is "conclusively presumed to be disabled based on his or her medical condition." Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997). If a claimant cannot prove that she is disabled at step three, she may do so at steps four and five. See Phillips v. Barnhart, 357 F.3d 1232, 1238–40 (11th Cir. 2004). To meet Listing 12.05 ("intellectual disability")[1], "a claimant must at least (1) have significantly subaverage general intellectual

---

[1] Effective September 3, 2013, the Social Security Administration replaced the term mental retardation with the term intellectual disability as a listed impairment. Change in Terminology: "Mental Retardation"

functioning; (2) have deficits in adaptive behavior; and (3) have manifested deficits in adaptive behavior before age 22." Crayton, 120 F.3d at 1219. These requirements are referred to as the Listing's "diagnostic criteria." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00 ("Listing 12.05 contains an introductory paragraph with the diagnostic description for [intellectual disability].") In addition to satisfying the diagnostic criteria, a claimant must meet one of the four severity requirements in paragraphs A through D of the listing. See id. § 12.05. Under paragraph C, a claimant must show that she has both "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. A valid IQ score of 60 to 70 satisfies the first prong of paragraph C and creates a rebuttable presumption that the claimant satisfies the diagnostic criteria for intellectual disability." Hodges v. Barnhart, 276 F.3d 1265, 1268–69 (11th Cir. 2001). "At the same time, it is well established that such a presumption does not arise where a qualifying IQ score is inconsistent with other record evidence concerning her daily activities and behavior." Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (citing Popp v. Heckler, 779 F.2d 1497, 1499 (11th Cir. 1986)). "But once the ALJ accepts an IQ score as valid and finds that the claimant's impairments meet or medically equal the other criteria of listing 12.05C, the disability determination cannot be based on the claimant's age, education, or work experience." Id. "In sum, a claimant proves that she meets listing 12.05C by establishing the diagnostic criteria for intellectual disability, including deficits in adaptive functioning; showing onset before

---

to "Intellectual Disability," 78 Fed. Reg. 46,499, 46,4501 (Aug. 1, 2013) (to be codified at 20 C.F.R. Pt. 404, Subpt. P, App. 1). This change was made because "the term 'mental retardation' has negative connotations," and "has become offensive to many people." Id. at 46,499. This change "d[id] not affect the actual medical definition of the disorder or available programs or services." Id. at 49,500. "So while the ALJ, whose decision issued before the change took effect, and the parties use the old terminology, we follow the agency's new nomenclature." Frame v. Comm'r, Soc. Sec. Admin., 596 F. App'x 908, 911 (11th Cir. 2015).

age 22; producing a valid, qualifying IQ score; and exhibiting the requisite deficits in work-related functioning." Frame, 596 F. App'x at 911.

As for Plaintiff's medically determinable mental impairments of panic attacks and anxiety, the ALJ determined these conditions, either singly or in combination, caused no more than minimal limitations in Plaintiff's ability to perform basis work activities and were not severe. (Doc. 7-2, p. 32.) ALJ Manico specifically noted he considered "the four broad functional areas" set forth in the disability regulations for mental disorders and in Listing 12.00C. (Id. at p. 33.) ALJ Manico determined, based on Dr. Michael O'Callaghan's assessment, that Plaintiff had mild limitation in the areas of activities of daily living and social functioning because she lived with her parents and children, she cared for her children, she drove occasionally but mainly used public transportation, she had friends but did not go out often, and she had no problems completing tasks. (Id.) (citing Doc. 7-13, p. 33.) The ALJ noted Plaintiff enjoyed socializing, attending church on Sundays, she had no difficulty with family, friends, neighbors, or others, and she was able to get along with authority figures. (Id.) (citing Doc. 7-6.) ALJ Manico also determined Plaintiff had mild limitation in concentration, persistence, or pace, as her intelligence was found to be average on mental status examination, her memory, concentration, and thought processes were normal, and she reported no difficulty in managing her finances. (Id.) Finally, the ALJ noted Plaintiff experienced no episodes of decompensation of an extended duration. These findings were affirmed on reconsideration by Dr. Charles Lankford, a state agency psychologist. (Id.)[2]

---

[2] The ALJ recounts Dr. Shelia Bailey's, a consultative psychologist, examination findings from November 12, 2011. (Doc. 7-2, pp. 33–34.) Because this examination occurred at a time when Plaintiff continued to work at substantial gainful activity, the undersigned is uncertain of the evidentiary weight ALJ Manico assigned this opinion (other than further supporting his finding of no severe impairment). (Id. at p. 34.)

The ALJ's determination that Plaintiff did not meet Listing 12.05C is supported by substantial evidence. While Dr. Whitley found Plaintiff to have a full scale IQ of 63, which is "extremely low", (doc. 7-7, p. 83), he diagnosed her with borderline intellectual functioning. (Id. at p. 84.) As noted above, ALJ Manico looked at the areas of functioning for diagnostic criteria set forth for the 12.00C listings and determined Plaintiff did not meet the "C" criteria of Listing 12.05C. In addition, ALJ Manico observed that Plaintiff's substantial gainful activity did not indicate severe mental impairments. Plaintiff has failed to present evidence of an intellectual disability with limitations associated with Listing 12.05C. This enumeration of error is without merit.

## VI.     Past Relevant Work

As to this enumeration of error, Plaintiff asserts the relevant issue is whether she can perform her babysitting job as she actually performed it. Plaintiff asserts the ALJ "never adequately secured all the functional aspects" of her babysitting position as she performed it. (Doc. 10, p. 24.) Plaintiff contends there was testimony at the hearing regarding the actual amount of weight she lifted in her babysitting job.

The Commissioner states substantial evidence supports the ALJ's decision that Plaintiff could perform her past relevant work as a babysitter as she actually performed this job, given her testimony that the heaviest weight she lifted was a newborn, she never lifted 50 pounds, and the job did not require her to climb, bend, balance, kneel, crouch, or crawl for more than a third of the day.

To support a finding that the claimant is able to return to her past relevant work, the ALJ must: (1) consider all the duties of that work and (2) evaluate the claimant's ability to perform them in spite of her impairments. Klawinski v. Comm'r of Soc. Sec., 391 F. App'x 772, 775

(11th Cir. 2010) (citing Lucas v. Sullivan, 918 F.2d 1567, 1574 n.3 (11th Cir. 1990)). A claimant seeking disability benefits bears the burden of proving that she cannot perform her past relevant work either as she performed it or as it is generally performed in the national economy. 20 C.F.R. §§ 404.1520(f), 404.1560(b)(3). "If the ALJ finds that the claimant cannot perform the functional demands and duties of her past job as she actually performed it, he will consider whether the claimant can perform the functional demands and duties of the occupation as generally required by employers throughout the national economy." Scharber v. Comm'r of Soc. Sec., 411 F. App'x 281, 282 (11th Cir. 2011) (citing SSR 82–61, 1982 WL 31387 (1982)). The ALJ may consider the testimony of a vocational expert in determining whether the claimant still possesses the ability to perform her past relevant work. 20 C.F.R. § 404.1560(b)(2). "A vocational expert is an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments." Waldrop v. Comm'r of Soc. Sec., 379 F. App'x 948, 952 (11th Cir. 2010) (citing Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004)).

In determining that Plaintiff retained the residual functional capacity to continue her past relevant work as a babysitter, ALJ Manico found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were "not entirely credible[.]" (Doc. 7-2, p. 35.) ALJ Manico determined that Plaintiff had a pacemaker installed and that her atrioventricular block status post pacemaker and dilated cardiomyopathy impairments are severe, as they caused reduced heart functioning and breathing difficulties. (Id. at p. 31.) The ALJ observed that there were several consultative and state agency reports for

14

Plaintiff's physical and mental assessments which were dated prior to her alleged onset date and did not discuss Plaintiff's treatment from her onset date forward.[3] (Id. at pp. 31–32.)

ALJ Manico also reviewed Plaintiff's records from her alleged onset date forward. The ALJ stated that the medical records did not support a finding of Plaintiff's vertigo and sleep apnea as severe impairments. Rather, the ALJ observed there was no objective evidence to support Plaintiff's complaints of dizziness. By example, the ALJ noted records from April 2012 in which Plaintiff alleged sinus pressure, ringing in her ears, vertigo, difficulty sleeping, and panic attacks, and with each visit, Plaintiff's conditions had varied or stopped. Moreover, there were no treatment records reflecting ongoing treatment for these conditions into 2013. (Id. at p. 32.) Further, ALJ Manico noted Plaintiff's testimony that her hypertension and chest pains were under control when she was on her medications, which he noted was confirmed by medical evidence. (Id.) (citing Doc. 7-13, pp. 59–73.) The ALJ also noted Plaintiff testified at the hearing that she weighed 270 pounds with a 43.6 body mass index, and the record reflects occasional diagnoses of obesity. However, Plaintiff testified that her weight did not interfere with her ability to function. In addition, the ALJ noted that Dr. Hanna Abu-Nassar, a consultative examiner, found that Plaintiff's obesity could aggravate her heart condition, but he did not state how and to what degree. Accordingly, the ALJ found these conditions not to be severe. (Id.)

---

[3] ALJ Manico discounted these records for several other reasons. First, he noted these examinations could not take into account the improvements to Plaintiff's conditions, which are reflected in later examinations and assessments and in her own function reports. In addition, the ALJ stated Plaintiff engaged in substantial gainful activity from 2001 until June 30, 2012, a fact which did not support the findings of these assessments. The ALJ also stated that the records reveal diagnoses of borderline intellectual functioning, as well as dyspnea, chest pain, heart murmur, and back pain, yet these findings were not consistent with Plaintiff's work as a home care aide at the time. Further, the ALJ stated that being able to care for the elderly and then later as a babysitter for several years, especially when those jobs were being performed as substantial gainful activity, was not consistent with a borderline intellectual functioning. (Doc. 7-2, p. 32.)

ALJ Manico observed that Dr. Abu-Nassar examined Plaintiff on March 17, 2012, and diagnosed Plaintiff with hypertension and congenital corrected transposition with bouts of congestive heart failure with symptomatic bradycardia and with post implantation of a pacemaker, aggravated by obesity and possibly obstructive sleep apnea. (Id. at pp. 35–36.) The ALJ noted that Dr. Abu-Nassar found Plaintiff could walk three blocks at a time, stand for an hour, sit for an hour, lift ten pounds and five pounds overhead, bend, squat, climb a flight of stairs, hold a coffee cup, open a jar, and hold a skillet and broom. Dr. Abu-Nassar also noted Plaintiff did not use any assistive devices for walking, and she could watch television, light housework, some cooking, and the laundry, and she walked for exercise. (Id. at p. 36.) Dr. Abu-Nassar found that Plaintiff was not in distress during the examination, but she had "poor inspiratory effort with diminished expiration," yet she was not wheezing. (Id.) Plaintiff's heart examination was normal, as were her gait, her tandem walking, ability to move around the room, and her fine and dexterous finger control. The ALJ noted that Plaintiff's leg raise was normal bilaterally, and her sensation to touch was intact.

ALJ Manico also noted Dr. Patty Rowley, a state agency physician,[4] found Plaintiff could: occasionally lift and/or carry twenty pounds, including upward pulling; frequently lift and/or carry ten pounds; push and/or pull, including operation or hand and/or foot controls on an unlimited basis, except as found for her lift/carry abilities; stand/walk for a total of six hours in an eight-hour work day; and sit for a total of six hours in an eight-hour work day. (Id. at p. 36.) Dr. Rowley also opined that Plaintiff could perform all postural activities occasionally, including climbing, balancing, stooping, kneeling, crouching, and crawling. The ALJ observed Dr. Crowley cited to Plaintiff's history of heart failure, pacemaker placement, and severe

---

[4] Drs. Abu-Nassar and Crowley agreed in certain aspects of their opinions, and the Court will not recount their duplicative opinions in its summation of Dr. Rowley's opinion.

16

bradycardia, and that Dr. Rowley also noted Plaintiff's three echocardiogram reports from 2011 and 2012. (Id.) ALJ Manico noted Dr. Rowley's findings were affirmed on reconsideration by Dr. George Carrion, a state agency physician. (Id.) (citing Doc. 7-13, pp. 77–78.)

The ALJ assigned "significant weight" to the findings of Drs. Rowley and Carrion. Specifically, ALJ Manico stated that, although Plaintiff experienced reduced functioning immediately following her pacemaker surgery, her functioning improved thereafter based on her activities of daily living both doctors noted. (Id. at p. 38.) In fact, the ALJ noted Plaintiff's own admission on her function report of improvement. ALJ Manico assigned "some weight" to Dr. Abu-Nassar's opinion because she examined Plaintiff within six months of her pacemaker surgery. (Id.) In addition, ALJ Manico found, "[w]ith her admittedly improved functioning over time, [Plaintiff] has regained abilities that are more consistent with" the residual functioning capacity to perform light work. (Id.)

In addition, the ALJ noted Plaintiff's testimony during the hearing. ALJ Manico noted Plaintiff alleged she had disabling panic attacks and vertigo. The ALJ also alleged the hypertension pills she takes control her blood pressure, and, while she suffered from chest pains, those were controlled when she took her medications. Plaintiff also asserted her weight did not interfere with her ability to function, and she did not have any side effects from her medications. Finally, the ALJ noted Plaintiff's testimony that she could lift twenty pounds on occasion, if she was not panicking. (Id. at p. 35.)

Further, the ALJ assigned "significant weight" to the opinions of Drs. O'Callaghan, Bailey, and Lankford, as their opinions were consistent with a finding of no severe mental impairment. In so doing, the ALJ stated that Plaintiff worked at substantial gainful activity at the

time of the examinations, there was no firm diagnosis of any mental impairment, she cared for her children, and her line of work involved caring for others. (Id. at p. 38.)

Finally, the ALJ asked Mr. Lampley, the vocational expert, during the hearing to consider a younger individual, who is a high school graduate and who retains the ability to perform light work, with occasional climbing, balancing, stooping, kneeling, crouching, and crawling. (Doc. 7-2, p. 56.) The ALJ also asked the vocational expert to consider the hypothetical individual who actually performed a babysitting job as Plaintiff did, and the vocational expert testified Plaintiff could return to her babysitting job as she actually performed it. (Id. at p. 60.)

The ALJ's determination that Plaintiff could return to her past relevant work, as she actually performed it, is supported by substantial evidence. In reaching this determination, ALJ Manico relied on the relevant medical records, Plaintiff's function reports, the testimony of the vocational expert, and the testimony of Plaintiff. This enumeration of error is without merit.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** that the Court **AFFIRM** the decision of the Commissioner. I also **RECOMMEND** that the Court **CLOSE** this case.

Any party seeking to object to this Report and Recommendation is **ORDERED** to file specific written objections within **fourteen (14) days** of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action.

The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence. Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Clerk of Court is **DIRECTED** to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 29th day of December, 2015.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA